Joseph Butera et als. 
vs. Eq. No. 11806. 
Joseph C. Ayotte et als.

December 29, 1932.

WALSH, J. Heard on bill, answer and proof.

This is a petition filed by unsuccessful bidders seeking the aid of this Court in setting aside the award of two contracts for the collection and disposition of rubbish, ashes, etc., and garbage, by the Board of Aldermen of the City of Woonsocket acting as a Board of Health, on the ground that said award or awards were made contrary to the provisions of Chapter 4 of the Revised City Ordinances of the City of Woonsocket.

The testimony in the case showed the following facts: On September 28th, October 3rd and October 11th, 1932, the Board of Health advertised for proposals for the collection and disposal of rubbish, ashes and garbage. Bids were asked on six bases: (1) Collection and disposal of rubbish, ashes, etc., for three years; (2) Collection and disposal of rubbish, ashes, etc., for five years; (3) Collection and disposal of garbage for three years; (4) Collection and disposal of garbage for five years; (5) Collection and disposal of rubbish, ashes, etc., and garbage combined for three years; (6) Collection and disposal of rubbish, ashes, etc., and garbage combined for five years. The complainants and others submitted proposals on one or more of these offers.

On October 14, 1932, the bids were opened and read. On October 17, 1932, the Board of Health awarded the rubbish, ashes, etc., contract to Eugene Derosiers, one of the respondents, for the sum of $65,000, with a proviso that satisfactory bond be filed. On the same day, the Board of Health awarded the garbage contract to Frank Bolduc, for the sum of $45,000, with a proviso that satisfactory bond be filed. On October 22, 1932, the Board of Health rescinded the award to Bolduc because of Bolduc's failure to file a satisfactory bond.

The Board of Health, after rescinding the Bolduc award, called into conference with it the bidders who had made combined bids on propositions five and six and requested each of them to separate their combined bids into separate bids and inquired if any one of them was willing to take the garbage award at the price bid by Bolduc, to-wit, $45,000. Ferrelli and Cesario, two of complainants, had submitted a bid of $53,000 for the garbage disposal and a bid of $112,498 for the combined contracts. They refused to separate their combined bid and stated to the Board that they could not consider the garbage contract at $45,000. Butera also refused to consider any deviation from his original bid, which was $112,000 for the combined contracts. Joseph Wright, however, who had made a combined bid, agreed to take over the garbage contract for $45,000. The contracts of Derosiers and Wright were approved by the Board of Health, executed by it and were duly approved by the Mayor.

The two lowest bidders, Derosiers $65,000 and Bolduc $45,000, total $110,000. The awards to Derosiers and Wright total $110,000. The lowest combined bid by the Butera Construction Company for both rubbish and garbage was $112,000. The Ferrelli and Cesario bid for garbage alone was $53,000. There is neither intimation nor charge in the bill or in the testimony of any fraud, collusion, mistake, oversight or abuse of discretion on the part of the Board of Health in the award of either of these contracts.

The claim of the petitioners is that the Derosiers and Wright contracts are illegal because they were not the lowest responsible bidders; that the Board of Health should have rescinded the Derosiers contract when it appeared that Bolduc was unable to furnish a suitable bond on the garbage proposal; that upon that happening, the Board

should have rejected all bids and should have re-advertised for new bids or in the alternative should have accepted the next higher bid for the garbage disposal, that of Ferrelli and Cesario in the sum of $53,000.

The Board of Health of the City of Woonsocket receives its authority from Chapter 51, Section 13 of the General Laws of Rhode Island (1923). This statute provides inter-alia: "* * * (The) Boards of Aldermen shall be ex-officio boards of health in their respective towns, and may make such rules and regulations, not repugnant to law, as they shall judge proper, for the preservation of the health of the inhabitants thereof, the prevention and abatement of nuisances, the promotion of cleanliness, etc. * * * ." The Board of Aldermen, as such, has certain powers regulated by city ordinance. The Board of Aldermen acting as a Board of Health has additional powers given to it by the authority of the State. The power given expressly to a Board of Health by the State necessarily carries with it the incidental authority to effectually perform the duties delegated to it by the State. A city ordinance attempting to restrict or curtail the powers of a Board of Health in matters delegated to it by the State would meet with disapproval in the courts of this State.

In the present instance, we do not find, as argued by respondents, that there is any conflict between the statute and the city ordinance of any consequence, especially since the Board of Health has heretofore recognized and obeyed the ordinance in the matter of awarding contracts. Chapter 4 of the Revised Ordinances of the City of Woonsocket governs the award of city contracts by "The Board of Aldermen, an officer, committee, commissioners or boards appointed by the City Council." Section 1 provides, in cases where the sum involved will probably amount to $200 or more, that the Board shall advertise for sealed proposals accompanied by a bond satisfactory to "said Board of Aldermen, officer, committee, commissioners or boards." Section 1 also provides that the Board of Aldermen, etc., "may, in his or its discretion reject any or all such proposals" and that "*no contract shall be made at a higher price than that of the lowest responsible bidder.*"

This language underlined must be distinguished from the usual language in such statutes and ordinances, viz.: "*the lowest bidder*" or "*lowest responsible bidder.*" It cannot be argued that the contracts were made "*at a higher price than that of the lowest responsible bidder*" when the combined price of the two awards is equal to the combined figures of the two lowest separate bids and is $2,000 less than the combined lowest bid for both contracts. The Board of Health had the power to select a separate proposal or a combined proposal as well as to consider one proposal independently of any of the others. The records of the Board show that the Derosiers proposal was considered separately and the award was made to Derosiers without regard to the Bolduc bid. As Derosiers qualified by giving a satisfactory bond and the contract was approved thereafter by the Mayor, it would seem that Derosiers received a valid contract which bound the city. Unless it clearly appears that a given act by a Board of Health is either beyond their jurisdiction or is a palpable abuse of their discretion, it is binding upon the city and cannot be questioned.

*Pope Mfg. Co.* vs. *Granger*, 21 R. I., 298 at page 301.

We must find from the evidence that the Derosiers bid was in strict compliance with the ordinance and was duly accepted by the Board of Health and that the award was properly made. We find no duty upon the Board to rescind the award to Derosiers upon discovering Bolduc's inability to furnish a satisfactory bond.

The ordinance and advertisement reserved the right to the Board to reject any or all such proposals in their discretion. A Board of Health is charged by law with the discharge of very important duties and to perform such duties faithfully and intelligently requires discretion.

In the present instance, the Board was compelled to make the award at a price that did not exceed that of the lowest responsible bidder. In the collection of rubbish, ashes, etc., and garbage, many other elements than price must be considered with the wisest discretion, such as financial responsibility, dependability, equipment, personnel, method of disposal, containers, vehicles, etc. All these are of prime importance in safeguarding the public health. The Board has advertised these proposals twice and it may be assumed that it had before it the bids of all persons interested in the contracts. The Board of Health was justified, therefore, in believing that further advertisement would be useless. The bids submitted were not wholly satisfactory to the Board and the Board of Health in the exercise of its discretion determined that the price of $53,000 for the garbage contract was too high and called in all the bidders interested to notify them to that effect. There is no question on the evidence but that all the bidders had the opportunity to accept the garbage contract at $45,000 and that they all refused it except Mr. Wright.

The award to Wright was the exercise of sound business judgment and wise discretion by the Board of Health. It saved the city $8,000 and as well the Board satisfied itself as to Mr. Wright's other qualifications for the proper performance of the important duties which the garbage contract comprehended. The Board, further, rejected all other bids, including those of petitioners. In the absence of fraud or collusion, we must assume that the Board acted in the honest exercise of its discretion. In granting this award to Wright, the Board did not violate any provision of the ordinance. It exercised for the best interests of the city the discretionary powers vested in it by the ordinance and this exercise of discretion cannot be attacked in the courts.

For these reasons it appears that the complainants have failed to show any reason for the intervention of equity in the premises and the Bill of Complaint is therefore denied and dismissed.

For complainants: Morris E. Yaraus.

For respondents: Eugene L. Jalbert, Felix A. Toupin.

